**IN THE COURT OF APPEALS OF IOWA**

No. 14-0884
Filed September 17, 2014

**IN THE INTEREST OF M.H.,**
**Minor Child,**

**D.B., Mother,**
**Appellant.**
_____

Appeal from the Iowa District Court for Cerro Gordo County, Annette L. Boehlje, District Associate Judge.

A mother appeals the juvenile court's termination of her parental rights with respect to her son. **AFFIRMED.**

Crystal L. Ely of Young Law Office, Mason City, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Carlyle D. Dalen, County Attorney, and Andrew Olson, Assistant County Attorney, for appellee State.

David Grooters, Mason City, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**POTTERFIELD, P.J.**

A mother appeals the juvenile court's termination of her parental rights with respect to her son. We affirm.

**I. Factual and Procedural Background**

The Iowa Department of Human Services (DHS) first began work with the mother and her son in 2009. At that time, the mother's paramour provided most of the child's care. Since then, the mother has left that relationship and has been in and out of relationships with other men. Every time she took on a new paramour, she told the child the paramour was his father, creating confusion and frustration in the child.[1]

In 2012, DHS opened another case because of the child's exposure to domestic violence. The DHS supervisor at that time realized there had not been positive progress since 2009. The child appeared to provide most of his own care. The mother made little effort to oversee the child, the home was unkempt and emitted a persistent odor, and both the mother and child lacked common hygienic care. The child exhibited serious misbehaviors and needed constant attention. He acted out to receive that attention from the mother, but the mother often did not engage with the child. The mother appeared to resist making changes to improve her parenting abilities.

The mother decided to allow her newest paramour to live with her and the child. The man was on probation for sexual offenses against a minor. She resisted DHS's direction that she not allow the man to have access to the child.

---

[1] Between late 2012 and the juvenile court's order in May 2014, the mother had introduced the child to five new "fathers."

After the paramour moved in with the mother and child, the State removed the child from the mother's custody.

DHS attempted to work with the mother to improve her parenting skills throughout the next year. During that year, the mother's visits with the child were not productive. She fell asleep during visitations, ignored the child to play with her phone, and generally did not engage with the child. When the child acted out, the mother would become overwhelmed and angry and leave the room.

The mother was largely uncooperative and aggressive with DHS, leaving "erratic and angry messages, yelling at providers, yelling at [DHS] workers, swearing at workers, [and] making threats about what she will do when she sees them." The mother has multiple medications to manage her anger and mental well-being, but she adheres to the medication regimen irregularly and at her whim.

The DHS worker found the mother was unable to internalize or effectuate any of the parenting skills she had been taught. According to a psychological evaluation report, the mother's intellectual abilities on most metrics indicated mild mental retardation and a second grade reading level. The mother was formally diagnosed with a Learning Disorder NOS, Borderline Intellectual Functioning, and Borderline Personality Traits. The psychologist wrote in that report, "At present, [the mother] does not appear to have the requisite abilities to adequately manage her son's difficulties, nor did she appear as motivated to make any substantial changes."

The State petitioned to terminate the mother's parental rights. The juvenile court terminated in its May 13, 2014 order pursuant to Iowa Code section 232.116(1)(f) (2013).[2] The mother appeals.

## II. Standard of Review

"We review proceedings to terminate parental rights de novo." *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011).

## III. Discussion

The mother raises three issues on appeal.

*A. Lack of Clear and Convincing Evidence.* First, the mother asserts there is not clear and convincing evidence to satisfy the requirements of Iowa Code section 232.116(1)(f). She concedes the first three of the four requirements are met, but she argues the fourth—"clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102"—is not satisfied.

A child cannot be returned to the custody of his parents under section 232.102 when doing so would expose the child to "some harm which would

---

[2] The court may order the termination of parental rights when:

    *f.* The court finds that all of the following have occurred:

        (1) The child is four years of age or older.

        (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

        (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

        (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1) (2013).

justify the adjudication of the child as a child in need of assistance." Iowa Code § 232.102(5)(a)(2); *see In re A.M.S.*, 419 N.W.2d 723, 724–25 (Iowa 1988). Two such harms are: "harmful effects as a result of . . . the failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child," Iowa Code section 232.2(6)(c)(2); and when a "parent's . . . mental capacity or condition . . . results in the child not receiving adequate care," Iowa Code section 232.2(6)(n). "The threat of probable harm will justify termination." *In re M.M.*, 483 N.W. 812, 814 (Iowa 1992).

The juvenile court found the child could not be returned to the mother's custody because doing so could subject the child to both of the aforementioned forms of adjudicatory harm. The mother claims there is not clear and convincing evidence of imminent likelihood of harm resulting from a failure of reasonable care. We find, however, there is clear and convincing evidence of a threat of probable harm. The mother's obstinacy in refusing to utilize the parenting concepts she has been taught, her failure to adhere to her medication regimen, and her tendency to associate with others who present a danger to the child are likely to lead to further situations like those that qualified the child as a child in need of assistance in the first place.

The mother also claims DHS failed to follow the recommendations of the psychological exam results, but fails to assert the significance of such failures relative to the issue of clear and convincing evidence. We affirm there is clear and convincing evidence that the child cannot be returned to the mother's custody under the threat of probable adjudicatory harm.

*B. Best Interests of the Child.* "The paramount concern in termination proceedings is the best interests of the child." *In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011) (citing *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). The mother claims the juvenile court's order is not demonstrably in the best interests of the child. She asserts that because DHS did not use reasonable efforts to reunify the mother and child, she was unable to demonstrate that termination was not in the child's best interests. We agree with the juvenile court—DHS exerted significant effort to help the mother improve her parenting and allow her to demonstrate that retention of custody was in the child's best interest. She failed to do so, and we therefore affirm on this issue.

*C. Factors Weighing against Termination.* The mother claims there is clear and convincing evidence the factors found in Iowa Code section 232.116(3)(d)—the necessity of placing the child "in an institution for care and treatment" and that "the continuation of the parent-child relationship is not preventing a permanent family placement for the child"—apply, rendering termination improper.[3] We note (and the mother concedes) the statutory exceptions are permissive, not mandatory. *D.S.*, 806 N.W.2d at 474–75.

The child has been moved to a psychiatric medical institution for children because of the failure of his foster care placement. It is true the mother's relationship with him does not directly interfere with the placement process.

---

[3] The State asserts the mother did not make this claim below or move to enlarge or amend the termination order for clarification or reconsideration of these factors. It alleges no error has been preserved for our review regarding this issue. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The record shows the mother objected to termination as a permanency goal before the juvenile court, but the court failed to describe or rule upon the precise grounds upon which she objected. We cannot say with certainty that the mother did not raise this issue below, and we reach the merits of the claim.

However, these facts do not outweigh the fact that the mother's inconsistent exercise of her visitation rights has demonstrably disappointed and frustrated the child. Even though the mother's relationship with the child will not prevent the child's future residential placement, termination remains in the child's best interest. We agree with the juvenile court that application of the statutory factors does not warrant the denial of the State's termination petition.

## IV. Conclusion

The juvenile court relied on clear and convincing evidence to find termination proper under Iowa Code section 232.116(1)(f). The evidence demonstrates that the best interests of the child will be served by terminating the mother's parental rights for his future placement in a positive familial setting. The mother's claim that statutory factors weigh against termination does not overcome our finding that termination is in the best interests of the child.

**AFFIRMED.**